1                    L. Ori

2          UNITED STATES DISTRICT COURT

3          EASTERN DISTRICT OF MISSOURI

4                EASTERN DIVISION

5    AWARE PRODUCTS LLC D/B/A    )
     VOYANT BEAUTY,              )
6                                )
                     Plaintiff,  )
7                                )
            vs.                  )     No. 4:21-cv-249-JCH
8                                )
     EPICURE MEDICAL, LLC,       )
9    FOXHOLE MEDICAL, LLC, and   )
     LEE ORI,                    )
10                               )
                     Defendants. )

11

12      REMOTE VIDEOTAPED DEPOSITION OF LEE ORI

13                March 24, 2022

14

15

16

17

18

19

20   Reported by:

21   KATHY S. KLEPFER, RMR, RPR, CRR, CLR

22

23

24

25   JOB NO. 208140                      **EXHIBIT G**

1              L. Ori

2          March 24, 2022

3

4      REMOTE videotaped deposition of

5   LEE ORI, before Kathy S. Klepfer, a

6   Registered Professional Reporter,

7   Registered Merit Reporter, Certified

8   Realtime Reporter, Certified Livenote

9   Reporter, and Notary Public of the State

10   of New York.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                          L. Ori

 2                A P P E A R A N C E S:

 3                (All Appearing Remotely)

 4

 5    SHER TREMONTE

 6    Attorneys for Plaintiff

 7          90 Broad Street

 8          New York, NY 10004

 9    BY:  JUSTIN GUNNELL, ESQ.

10          ROBERT PENN, JR., ESQ.

11

12    KORANTENG LAW FIRM

13    Attorneys for Defendants

14          5050 Quorum Drive

15          Dallas, TX 75254

16    BY:  FIBBENS KORANTENG, ESQ.

17

18

19    ALSO PRESENT:

20          TRISHA VON LANKEN, Videographer

21

22

23

24

25
```

1                        L. Ori

2              Greg See has multiple companies.

3   Global Medical Source was a company that he had

4   that was specifically for PPE and sanitizer.

5       Q.    And did you have an understanding of

6   why you were supplying this agreement?

7       A.    Per Michelle's direction of new credit

8   application for new customers.

9       Q.    Uh-huh.  Okay.  And is that your

10  signature on the bottom here?

11      A.    Yes, sir.

12      Q.    And did you understand by signing this

13  you were agreeing to its terms?

14      A.    Yes, sir.

15      Q.    And if you look here, it says -- let's

16  see.  "The undersigned by this credit

17  application agreement does continually

18  personally guarantee payment for all goods and

19  merchandise purchased by the applicant."

20              Do you see that?

21      A.    I do.

22      Q.    And you understood when you signed

23  this that you were personally guaranteeing

24  payment for all goods and merchandise purchased

25  by Epicure?

1                          L. Ori

2       A.    I did not.

3       Q.    But that is your signature on the

4  bottom?

5       A.    It is.

6       Q.    And what became of this?  You sent to

7  it Ms. Jimenez?

8       A.    Yes, sir.

9       Q.    And -- and did you receive a reply

10  from her?

11      A.    Don't recall.

12      Q.    Okay.  And this is dated April 12,

13  2020, this e-mail, correct?

14      A.    Yes.

15      Q.    Who's Courtney Reihs, R-E-I-H-S?

16      A.    I do not know Courtney.

17      Q.    Okay.  Never had any dealings with

18  her?

19      A.    Other than a -- I'm going to say no.

20  I don't even recognize the name.

21      Q.    Got it.

22            And now just a question:  You -- by

23  this time, Epicure has been formed, correct,

24  April 12, 2020?

25      A.    That is correct.

                              L. Ori

1

2       A.    I'm waiting.

3             Fibbens, if I can paraphrase the --

4    the second -- second line down on that document,

5    it asked for how long we had been in business,

6    and I indicated when I filled it out for Epicure

7    that we had been in business for one month, that

8    we were a newly formed entity.

9             Based on that timeline, that is

10   roughly a month after we formed.  At that point,

11   Epicure had already submitted POs as Justin has

12   already established.

13      Q.    Okay.  Let me ask you, I want to go

14   specifically to a line that opposing counsel had

15   pointed out to you about a personal guarantee.

16            Do you recall that?

17      A.    I do.

18      Q.    Do you recall that discussion with

19   opposing counsel is what I meant.

20      A.    Yes, sir.

21      Q.    Okay.  So let me ask, was there ever a

22   discussion between Epicure and Voyant about

23   somebody personally guaranteeing any purchases

24   made by Epicure?

25      A.    Not one time.

1                          L. Ori

2       Q.    Okay.  Were you, Lee Ori, asked to

3   personally guarantee purchases made by Epicure?

4       A.    No.

5       Q.    In fact, earlier when you were

6   discussing with opposing counsel, he asked if

7   you knew this line was in this credit

8   application.

9              Do you recall that testimony?

10      A.    I do.

11      Q.    And your answer was?

12      A.    I was unaware of that line being in

13  that document.

14      Q.    Okay.  All right.

15             When you signed that credit

16  application, who were you signing it on behalf

17  of?

18      A.    As a manager of Epicure.

19      Q.    Okay.

20      A.    And Fibbens, can I add one more thing

21  there without you beating me?

22      Q.    I'll kill you later.

23      A.    Well, specifically, the -- the --

24  the -- there was an e-mail sent from Michael

25  Partridge to -- to me regarding the -- that if

Page 280

1                          L. Ori

2    we agreed to the payment terms, that that

3    would -- then we would not have to have a credit

4    check, which to me was -- was -- there was no

5    credit responsibility assuming that we paid --

6    we agreed to the terms.

7              So no credit check, and thus the

8    credit app. was literally as it was relayed in

9    the e-mail, a formality for new customers.

10   Q.    All right.

11             Earlier, there was a discussion about

12   the distributions that were -- that were made to

13   you, Sarah and Dan.

14             Do you recall those discussions?

15   A.    Yes.

16   Q.    Okay.  And specifically, I want to

17   talk about a distribution that was made I think

18   October 3 of 2020, and you said that was the

19   last distribution that you guys made to

20   yourselves.

21             Do you recall that?

22   A.    Yes.  And it was October 23.

23   Q.    "October 23."  Thanks for the

24   correction.

25             And you, I believe, discussed an