1  MICHAEL PARTRIDGE

2  UNITED STATES DISTRICT COURT
   EASTERN DISTRICT OF MISSOURI
3  EASTERN DIVISION

4  AWARE PRODUCTS LLC D/B/A         )
   VOYANT BEAUTY,                   )
5                                   )
             Plaintiff,             )
6                                   )
             vs.                    )  NO. 4:21-CV-249-JCH
7                                   )
   EPICURE MEDICAL, LLC,            )
8  FOXHOLE MEDICAL, LLC, and        )
   LEE ORI,                         )
9                                   )
             Defendants.            )

10

11

12

13     REMOTE DEPOSITION UPON ORAL EXAMINATION OF

14                  MICHAEL PARTRIDGE

15

16            TUESDAY, APRIL 5, 2022
                    9:37 A.M.
17

18     (All participants are appearing remotely)

19

20

21

22

23

24  REPORTED BY:
    MONNA J. NICKESON, CLR, RPR, CRR, CCR NO. 3322
25  JOB:  209371

**EXHIBIT H**

```
                                                                  Page 2
 1                       MICHAEL PARTRIDGE

 2              APPEARANCES:

 3
    FOR THE PLAINTIFF:
 4
            ROBERT PENN, ESQ.
 5          JUSTIN SHER, ESQ.
            Sher Tremonte
 6          90 Broad Street
            New York, New York 10004
 7

 8  FOR THE DEFENDANT:

 9          FIBBENS KORANTENG, ESQ.
            Koranteng Law Firm
10          5050 Quorum Drive
            Dallas, Texas 75254
11
    ALSO PRESENT:
12
            Joel Coriat, videographer
13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    MICHAEL PARTRIDGE

 2                       I N D E X

 3          AWARE vs. EPICURE
            NO. 4:21-CV-249-JCH
 4          APRIL 5, 2022

 5   WITNESS:  MICHAEL PARTRIDGE                      PAGE

 6   EXAMINATION BY MR. KORANTENG:                      7

 7                       EXHIBITS

 8    NUMBER              DESCRIPTION                 PAGE

 9   Exhibit 1    "Amended Notice of Deposition"       20
     Exhibit 2    Plaintiff's first set of             40
10                interrogatories to defendants
     Exhibit 3    "Plaintiff's responses and           84
11                objections to defendants' first
                  set of requests for production
12                of documents."
     Exhibit 4    AWAREVOYANT_000307                   87
13   Exhibit 5    Email from Witness to Paul           90
                  dated March 26
14   Exhibit 6    Email dated March 26 from Paul       92
                  Heslin to Witness
15   Exhibit 7    Email from Witness to Paul           96
                  Heslin
16   Exhibit 8    Email from Lee Ori to Paul, the     101
                  Witness, Dan Reilly, and Sarah
17                Simmers
     Exhibit 9    Email                               107
18   Exhibit 10   March 31, 202 email from Witness    110
                  to Paul Heslin
19   Exhibit 11   Email, AWAREVOYANT_000408           112
     Exhibit 12   Email, AWAREVOYANT_000436           115
20   Exhibit 13   AWAREVOYANT_000426                  131
     Exhibit 14   Email, AWAREVOYANT_000297           134
21   Exhibit 15   Email, AWAREVOYANT000440-000445     143
     Exhibit 16   Email, AWAREVOYANT_000463           143
22   Exhibit 17   Email, AWAREVOYANT_000491           148
     Exhibit 18   Email, AWAREVOYANT_000626 -         149
23                AWAREVOYANT_000631

24

25
```

Page 117

1      MICHAEL PARTRIDGE

2      A.    Correct.

3      Q.    On page 2 of this document is a
4   credit application; do you see that?

5      A.    I do.

6      Q.    Who is listed as the business
7   information, who is listed on there?

8      A.    Epicure Medical, LLC.

9      Q.    Was it Voyant's intention for
10  Epicure to fill out this credit application?

11         MR. PENN:  Objection to form.

12         THE WITNESS:  We had known that Lee
13     was creating another company specific for
14     this business.

15  BY MR. KORANTENG:

16     Q.    When you say we had known, you
17  mean -- do you mean Voyant knew?

18     A.    Correct, yes.

19     Q.    And when did you know that Lee was
20  creating another company specific for this
21  business?

22     A.    I can't tell you exactly, but we
23  knew in -- during preliminary conversations
24  with Lee and Paul that they were creating a
25  separate company.

Page 118

1         MICHAEL PARTRIDGE

2      Q.    And you knew that that company was
3   going to be the one that was going to be used
4   for the hand sanitizer business?
5      A.    Correct.
6      Q.    Is it fair, then, to say that you
7   knew Foxhole wasn't going to be the company
8   that fulfilled the March 26 LOI that it
9   submitted?
10           MR. PENN:  Objection to form.
11           THE WITNESS:  At this point, yes.
12  BY MR. KORANTENG:
13     Q.    So I'm sorry, let me go back to this
14  credit application.  You see the business
15  information over here, at the top of the
16  application.
17           Can you tell us again which -- what
18  company is listed there?
19     A.    Epicure Medical, LLC.
20     Q.    And you testified earlier that you
21  did not discuss this application with Lee Ori
22  or Paul Heslin, or anybody else, for that
23  matter; is that correct?
24     A.    Correct.
25     Q.    Was there any point in time when

Page 124

1          MICHAEL PARTRIDGE

2    information once it gets this credit

3    application?

4         A.    At this point, nothing.

5         Q.    Okay.  Do you check the bank to make

6    sure that whatever they put here is -- is this

7    one -- is this another point of reference that

8    you check before deciding to offer credit --

9         A.    No.

10        Q.    -- or payment terms?  No.  Okay.

11              So other than the trade references,

12   what else does Voyant do with this credit

13   application before it decides to offer credit

14   or payment terms?

15        A.    If applicable, we'll run a Dun &

16   Bradstreet on the customer as a new customer

17   that wouldn't provide any information.

18        Q.    Did Voyant in this case contact

19   CosmeTech, LLC?

20        A.    I can't presume.  I do not know.

21        Q.    How about Salus Medical?

22        A.    Same answer.

23        Q.    And Global Medical Source?

24        A.    Same answer.

25        Q.    As you sit here today, you can't

Page 125

1        MICHAEL PARTRIDGE

2   tell whether Voyant contacted any one of these

3   companies are not?

4        A.    Correct.

5        Q.    Does Voyant always check the

6   references, the trade references, before

7   deciding to offer credit?

8        A.    No.

9        Q.    It doesn't?

10       A.    No.

11       Q.    Under what circumstances would

12  Voyant not check the trade references before

13  deciding whether to offer credit or not?

14       A.    If we had predetermined that we

15  would not be offering credit, we would not

16  check trade references.

17       Q.    Did you make that determination in

18  this case?

19       A.    Yes.

20       Q.    So Voyant decided it wasn't going to

21  offer Epicure credit; is that correct?

22       A.    We did not offer them a credit

23  limit, no.

24       Q.    I'm sorry.  So I understand, you

25  didn't offer them any credit; is that correct?

TSG Reporting - Worldwide    877-702-9580

Page 126

1        MICHAEL PARTRIDGE

2     A.    We did not offer them a dollar value
3  of credit, no.  As part of their payment terms,
4  yes.
5     Q.    What's the distinction?  You said if
6  you decide you weren't going to offer credit,
7  then you don't check the trade references.
8           Was that your testimony?
9     A.    Correct.
10    Q.    Okay.  And in this case, you didn't
11 check the trade references; is that correct?
12    A.    I said I don't know.
13    Q.    Okay.  So when you say you did not
14 offer them a credit limit, what do you mean by
15 that?
16    A.    A credit limit would allow you to
17 purchase up to that limit without any deposits.
18    Q.    And so are you saying that you
19 offered Epicure Medical unlimited credit?
20         MR. PENN:  Objection to form.
21         THE WITNESS:  We did not authorize
22    them a credit limit, no.
23 BY MR. KORANTENG:
24    Q.    Did you authorize them to order
25 anything without making any deposits -- up to

TSG Reporting - Worldwide    877-702-9580

Page 127

```
 1                  MICHAEL PARTRIDGE
 2   any amount at all without making any deposits?
 3        A.    No.
 4        Q.    Is it fair to say, then, that you
 5   did not authorize any credit for them, then?
 6        A.    No.
 7        Q.    It's not fair to say that?
 8        A.    Correct.
 9        Q.    What credit did you offer them?
10        A.    Their payment terms had a 10-day
11   window at the end.
12        Q.    Are you equating payment terms to
13   credit?
14        A.    Yes.
15        Q.    When you offer your customers
16   payment terms, do you -- do you make that
17   determination on the basis of the credit
18   application?
19        A.    Not necessarily, no.
20        Q.    What do you base that off of?
21        A.    It's a group decision from the
22   executive and sales.
23        Q.    In this case, what specifically did
24   the executive and sales decide as far as what
25   to offer -- what to offer Epicure Medical, LLC?
```

Page 128

MICHAEL PARTRIDGE

2  A.   Their terms, 25 percent down,
3  50 percent prior to shipping, 25 percent,
4  net 10.
5  Q.   And you are saying that was based on
6  this credit application?
7       MR. PENN:  Objection.  Misstates
8       testimony.
9       THE WITNESS:  No.
10 BY MR. KORANTENG:
11 Q.   It wasn't based on this credit
12 application?
13 A.   No.
14 Q.   Okay.  I asked you this as a general
15 question to -- relating to all customers, but
16 I'm going to ask you specifically.
17      Did you or anybody discuss with
18 Mr. Ori that by signing this application on
19 behalf of Epicure, that he was personally
20 guaranteeing payment for all goods and
21 merchandise purchased by the applicant?
22 A.   No.
23 Q.   Did you or anybody at Voyant discuss
24 with Mr. Ori that you are basing any credit
25 decisions that you make, if any, on the fact

Page 129

```
 1                  MICHAEL PARTRIDGE
 2   that he is signing this credit application?
 3            MR. PENN:  Objection to form.
 4            THE WITNESS:  You'll have to repeat
 5       the question, please.
 6   BY MR. KORANTENG:
 7       Q.   Did you or anybody at Voyant discuss
 8   with Mr. Ori that you are basing any credit
 9   decisions that you make, if any, on the fact
10   that he is signing this credit application?
11            MR. PENN:  Objection to form.
12            THE WITNESS:  Not that I'm aware of,
13       no.
14   BY MR. KORANTENG:
15       Q.   Let me ask you -- sorry, let me put
16   this back up again.
17            Has Voyant ever filed a lawsuit
18   against any of its customers enforcing this
19   credit application and agreement?
20       A.   Not that I'm aware of, no.
21       Q.   Has any Voyant customer defaulted on
22   its obligations under circumstances where
23   Voyant offered credit based on this credit
24   application?
25            MR. PENN:  Objection to form.
```